RECEIVED
JUL 1 0 2015
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY:

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| AARON EMIGH, et al., | : | CIVIL ACTION NO: 2:14-CV-02808 |
| VERSUS | : | JUDGE DONALD E. WALTER |
| WEST CALCASIEU CAMERON HOSPITAL, et al. | : | MAGISTRATE JUDGE KATHLEEN KAY |

### MEMORANDUM ORDER

Before the court is a motion to remand [Doc. #34] filed on behalf of plaintiffs Aaron Emigh, Glynn Able Benoit, and Laura Allison Delouche (collectively, "plaintiffs"). The following defendants oppose the motion: United HealthCare Insurance Company [Doc. #48]; Bridgestone Americas, Inc. [Doc. #49]; PPG Industries, Inc. [Doc. #50]; Highmark, Inc. d/b/a Highmark Blue Shield [Doc. #50]; West Calcasieu Cameron Hospital [Doc. #51]; and Louisiana Health Service and Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana [Doc. #52].

For the following reasons, the motion to remand [Doc. #34] is **GRANTED**.

### I. BACKGROUND

#### A. State Court Proceedings

Before removal to this court, this matter underwent extensive and protracted litigation in state court. The case began on October 7, 2009, in the 14th Judicial District Court in and for Calcasieu Parish, Louisiana, when plaintiff Aaron Emigh ("Emigh") sued defendant West Calcasieu Cameron Hospital ("WCCH") for improper billing practices. The petition alleged that Emigh was treated at WCCH in June 2009 for injuries sustained in a motor-vehicle accident.[1] Emigh alleged that he had

---

[1] Doc. #37-2, pp. 1–4.

health insurance at the time he was treated, and also alleged that WCCH was a member of his insurer's network of "contracted healthcare providers."[2] However, WCCH allegedly failed to submit a claim to Emigh's insurer and instead sought to collect the full amount of Emigh's medical charges directly from him, eventually asserting a lien against any tort recovery that Emigh might receive in connection with the underlying motor-vehicle accident. Emigh argued that WCCH's actions constituted unlawful "balance-billing"[3] in violation of the Louisiana Health Care Consumer Billing and Disclosure Protection Act, La. R.S. §§ 22:1871–1881 (the "Balance-Billing Act").

On October 20, 2009, Emigh filed an amended petition adding defendants George Hodges ("Hodges"), and Hodges's automobile insurer, State Farm Fire and Casualty Company ("State Farm").[4] Emigh alleged that Hodges was the driver at fault in the accident which necessitated Emigh's treatment WCCH. The amended petition therefore added negligence claims against Hodges and State Farm in addition to the claims under the Balance-Billing Act.

On July 27, 2010, Emigh filed another amended petition, in which he re-alleged his claims under the Balance-Billing Act in greater detail, and further claimed that WCCH's actions amounted

---

[2] Under Louisiana law, a "contracted health care provider" is defined as "a health care provider that has entered into a contract or agreement directly with a health insurance issuer or with a health insurance issuer through a network of providers for the provision of covered health care services." La. R.S. § 22:1872(6).

[3] "Balance-billing" occurs when a healthcare provider collects, or attempts to collect, from an insured patient: (1) any amount owed by the insurer; or (2) any amount in excess of the contracted reimbursement rate for covered health care services. La. R.S. § 22:1874; *see also Anderson v. Ochsner Health Sys.*, No. 2013-CC-2970, 2014 WL 2937101 at *2 (La. July. 1, 2014).

[4] Doc. #37-2, pp. 6–8. The amendments filed on October 20, 2009, and July 27, 2010, were both styled as "first" amended petitions. *See* Doc. #37-2, pp. 6–8; Doc. #37-3, pp. 34–50. This order will refer to the two "first" amended petitions according to the date each was filed, and to the second, third, and fourth amended petitions according to their designations.

to a breach of WCCH's preferred-provider contract with Emigh's health insurer.[5] Additionally, Emigh requested that the matter be certified as a class action, with the putative class consisting of all in-network patients who were balance-billed by WCCH since January 1, 2000.[6]

On June 30, 2011, Emigh filed his second amended petition.[7] The second amended petition added two new plaintiffs, Glynn Able Benoit ("Benoit") and Laura Allison Delouche ("Delouche"), who, like Emigh, advanced balance-billing and breach of contract claims against WCCH. The second amended petition also added R.J. Moss Enterprises, Inc. d/b/a Credit Services of Southwest Louisiana ("Credit Services"), a collection agency, as well as each of plaintiffs' various health insurers, as named defendants.[8] Emigh was alleged to have been insured by Highmark, Inc. d/b/a Highmark Blue Shield ("Highmark"); Benoit by United HealthCare Insurance Company ("UHC"); and Delouche by Louisiana Health Services Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA").[9]

According to plaintiffs, these insurers contractually promised them that network providers, such as WCCH, would: (A) file medical claims with the insurer; (B) accept a reduced network

---

[5] Doc. #37-3, pp. 34–50.

[6] Id. at 36, ¶ 13. According to the petition, January 1, 2000 was the effective date of WCCH's preferred-provider contracts with various health insurers. Id. at ¶ 14.

[7] Doc. #37-9, pp. 26–51. See supra note 4.

[8] Id. at 41–44.

[9] Doc. #37-9. pp. 28–30. In his original petition, Emigh alleged that he was insured by BCBSLA. Doc. #37-2, pp. 1–4. In the seconded amended petition, however, Emigh claimed that his insurer was actually Highmark. Doc. #37-9, pp. 27–28. According to plaintiffs, Highmark "is a member of the Blue Cross and Blue Shield Association, which is an association of Blue Cross and Blue Shield Licensees, which allows an insured of one BCBS Association member to utilize the benefits and reimbursement rates of any and all BCBS Association members nationwide." Id. at 30, ¶ 22.

reimbursement rate from the insurer; and (C) limit the insured's liability to any deductibles, co-payments, co-insurance, or other amounts as set forth in the policy of insurance as the insured's responsibility.[10] Plaintiffs argued that their insurers were liable because WCCH failed to perform as promised. In support thereof, plaintiffs asserted that the insurers' promises regarding network providers amounted to a *promesse de porte-fort*, a civil law contract under which the promisor guarantees that a third party will incur an obligation or render a performance to the promisee. *See* La. Civ. Code Ann. art. 1977. In a *promesse de porte-fort* contract, the promisor is liable if the third party does not incur the obligation or does not perform. *Id.* In addition to the *promesse de porte-fort* claim, plaintiffs also argued that the insurers were liable under a theory of detrimental reliance, *i.e.* that plaintiffs relied on the insurers' representations regarding network providers when they opted to purchase insurance and that such reliance harmed plaintiffs when WCCH balance-billed them.[11]

Defendants filed numerous exceptions to plaintiffs second amended petition.[12] On June 10, 2013, after extensive briefing and oral argument, the court ruled on the exceptions as follows: First, the court sustained WCCH's dilatory exception of vagueness and ordered plaintiffs to amend the petition in order to clarify the breach-of-contract claim against WCCH.[13] Second, the court overruled

---

[10] Doc. #37-9, pp. 44–45.

[11] *Id.* at 45–46.

[12] Doc. #37-22, pp. 3–5. Judge Wilford Carter, the first judge assigned to this matter, initially denied all of defendants' exceptions in open court on May 7, 2012. Doc. #37-37, p. 17. However, defendants then successfully moved to have Judge Carter recused because one of his part-time law clerks was simultaneously employed by plaintiffs' counsel. Doc. #37-37, pp. 15–29, 41–43. Consequently, Judge Carter's rulings on defendants' exceptions were vacated. *Id.* at 41–43. When Judge Kent Savoie was reassigned to the case, he considered the previously denied exceptions a second time. *Id.* at 46.

[13] Doc. #37-22, p. 4. As directed by the court, plaintiffs filed a third amended petition on July 9, 2013. *Id.* at 31–53. In addition to amending the breach of contract allegations against WCCH, the third amended petition removed all claims against Highmark, because plaintiffs had voluntarily dismissed

-4-

WCCH's peremptory exceptions of no cause of action and no right of action, finding that plaintiffs had a valid private right of action under La. R.S. § 22:1874, the statute which specifically prohibits balance-billing.[14] Third, the court overruled BCBSLA's peremptory exception of no cause of action, finding that plaintiffs sufficiently stated claims against the insurers under Louisiana Civil Code article 1977, which contemplates a *promesse de porte-fort*.[15] The court deferred ruling on all other exceptions.[16]

BCBSLA then filed an interlocutory appeal regarding the court's ruling that Delouche had stated a viable *promesse de porte-fort* claim. The Louisiana Third Circuit Court of Appeal found no error and summarily affirmed.[17] The Louisiana Supreme Court agreed, and, in a published opinion, held that Delouche's *promesse de porte-fort* claim against BCBSLA could proceed. *Emigh v. West Calcasieu Cameron Hosp.*, 145 So. 3d 369, 374–75 (La. 2014).

On remand, the district court considered numerous dispositive motions and exceptions.[18] At a hearing on August 29, 2014, the court denied all motions and exceptions save for one: a peremptory exception of non-joinder of an indispensable party, filed by BCBSLA.[19] BCBSLA argued

---

Highmark without prejudice. Doc. #37-37, pp. 1–5. In all other respects, the third amended petition was identical to the second.

[14] Doc. #37-22, p. 4. Shortly before the court's ruling, the Louisiana Supreme Court held that La. R.S. § 22:1874 allows for a private right of action for violations thereof. *See Anderson v. Ocshner Health Sys.*, 203-CC-2970, 2014 WL 2937101 (La. July 1, 2014).

[15] Doc. 37-33, p. 4

[16] *Id.* at 4–5.

[17] Doc. #37-34, pp. 47–48.

[18] Doc. #37-35, pp. 49–52.

[19] *Id.*

that plaintiffs' expansive definition of the putative class—that is, all improperly billed patients of WCCH who had health insurance—necessarily included patients who were covered under self-funded, employer-sponsored health plans.[20] BCBSLA therefore argued that those employer-sponsored plans were indispensable parties to this litigation, insofar as BCBSLA and UHC acted only as third-party claims administrators with respect to those plans. The district court granted the exception of non-joinder and ordered plaintiffs to amend their petition accordingly.[21]

On September 17, 2014, plaintiffs filed their fourth amended petition.[22] Therein, as directed by the court, plaintiffs named two additional defendants: Emigh's employer, defendant PPG Industries, Inc. ("PPG"); and Benoit's employer, defendant Bridgestone Americas, Inc. ("Bridgestone"). Delouche—who was not insured through an employer—continued to advance her claims directly against BCBSLA. The plaintiffs' claims against WCCH and Credit Services remained unchanged.

Plaintiffs' claims against PPG and Bridgestone were based on *promesse de porte-fort* and detrimental reliance theories. Stated broadly, plaintiffs argued that PPG and Bridgestone, in issuing health plans to their employees, effectively promised and represented that the third-party administrators of the plans (in this case, Highmark and UHC, respectively) would make their network of contracted healthcare providers available to enrolled employees, and that these network

---

[20] Doc. #37-11, pp. 10–12.

[21] The record does not contain the transcript of the hearing in which the district court considered BCBSLA's non-joinder arguments, and the order granting the exception does not include written reasons. Doc. #37-35, pp. 49–52.

[22] Doc. #1-2.

providers would not engage in balance-billing.[23] Accordingly, plaintiffs argued that PPG and Bridgestone were liable for WCCH's failure to perform as promised.

In addition to the new claims against PPG and Bridgestone, the fourth amended petition made two other changes. First, Highmark, which had previously been dismissed from the case without prejudice, was again added as a named defendant in its capacity as the third-party administrator of Emigh's PPG plan.[24] Second, plaintiffs' allegations against UHC were amended to reflect UHC's capacity as the third-party administrator of Benoit's Bridgestone plan, rather than UHC's previously alleged capacity as Benoit's direct insurer.[25]

## B. Removal to Federal Court

On September 26, 2014—nine days after the fourth amended petition was filed—UHC removed the matter to this court.[26] In its notice of removal, UHC argued that plaintiffs' claims against Bridgestone are preempted by the Employee Retirement and Income Security Act of 1974 ("ERISA").[27] Specifically, UHC argued that the claims against Bridgestone are subject to complete preemption under ERISA § 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B)], because Benoit, although purporting to base his claims on state law, actually seeks to "recover benefits" and "enforce his rights" under the terms of his ERISA plan. As such, UHC argues that federal subject matter

---

[23] *Id.* at 23–24.

[24] *Id.* at 8–9.

[25] *Id.* at 10–11.

[26] Doc. #1.

[27] Because UHC bases its removal arguments on Benoit's claims against Bridgestone and UHC. this order will also discuss the propriety of removal in terms of those parties. However, the court's analysis applies equally to Emigh's claims against PPG and Highmark, because Emigh's arguments against PPG and Highmark are identical to Benoit's claims against Bridgestone and UHC. Doc. #1-2, pp. 3–4, 8–14, 20–27.

jurisdiction exists, under 28 U.S.C. § 1331, as to the claims against the Bridgestone. As to plaintiffs' claims against the other defendants, UHC asserted that this court may appropriately assert supplemental jurisdiction under 28 U.S.C. § 1367.

Plaintiffs now move to remand.[28] Plaintiffs acknowledge that the Bridgestone plan is governed by ERISA and that the suit involves principal ERISA entities, *i.e.* the insured, the employer, the plan, and the third-party administrator of the plan.[29] Nevertheless, plaintiffs argue that the claims against Bridgestone are not preempted by ERISA, because the claims against Bridgestone do not involve an erroneous coverage determination or an improper administration of a claim.[30] Rather, plaintiffs argue that the claims implicate state law duties that are independent of ERISA, namely breach of a *promesse de porte-fort* under Louisiana Civil Code article 1977 and detrimental reliance under Louisiana Civil Code article 1967. Plaintiffs also argue that removal was untimely and that the removal lacks the consent of all defendants. The defendants oppose remand.[31]

## II. LAW & ANALYSIS

A civil action filed in state court may be removed to federal court if the federal court would have original jurisdiction over the matter. 28 U.S.C. § 1441(a). The removing party "bears the burden of showing that federal jurisdiction exists and that removal was proper." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). In assessing whether removal is appropriate, this court is guided by the principle that federal courts are courts of limited jurisdiction and that "the

---

[28] Doc. #34.

[29] *See Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir. 1990) (citations omitted) (defining principal ERISA entities).

[30] Doc. #34-1, pp. 13–15.

[31] Docs. ##48–52.

removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

The asserted basis for original federal jurisdiction in this matter is 28 U.S.C. § 1331, which provides that federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Under the longstanding well-pleaded complaint rule, . . . a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'" *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). Generally, federal question jurisdiction exists if a federal issue appears on the face plaintiff's state-court complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Accordingly, the plaintiff is the master of the complaint and may avoid federal jurisdiction by choosing to rely exclusively on state law claims. *Id.* at 398–99. "[A] case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue. *Id.* at 393 (emphasis in original) (citing *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 12 (1983)).

An exception to the well-pleaded complaint rule is recognized under the doctrine of complete preemption. "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life. Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). "'When a federal statute wholly displaces the state-law cause of action through complete preemption,' the state claim can be removed." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Beneficial Nat'l Bank v. Anderson*, 529 U.S. 1, 8 (2003)). Removal

is proper in a complete preemption situation because "when the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Davila*, 542 U.S. at 207–08 (citation omitted). ERISA is one such statute that completely preempts state law in certain circumstances. *Id.* at 208–09.

Congress enacted ERISA in order to provide a uniform substantive regulatory regime over employee benefit plans. *Davila*, 542 U.S. at 208. "ERISA's 'comprehensive legislative scheme' includes 'an integrated system of procedures for enforcement.'" *Id.* at 209 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)). "This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Davila*, 542 U.S. at 208. As such, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Id.* at 209 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54–56 (1987); *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 143–145 (1990)). If a plaintiff's state-law claims are completely preempted under § 502(a), such claims "are subject to removal under federal question jurisdiction, and ERISA offers the sole framework for relief." *Nixon v. Vaughn*, 904 F. Supp. 2d 553, 560 (W.D. La. 2012).

In addition to complete preemption under § 502(a), "ERISA might preempt a state law cause of action by way of conflict-preemption (also known as ordinary preemption) under § 514 [29 U.S.C. § 1144]." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999). Under § 514(a), "the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or

hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). Unlike a claim that is completely preempted under ERISA § 502(a), a claim that is "conflict" preempted under § 514(a) cannot establish federal jurisdiction; rather, the presence of conflict preemption merely serves as an affirmative defense to the state action. *Nixon*, 904 F. Supp. 2d at 560–61 (citing *Giles*, 172 F.3d at 337). "When a complaint contains only state causes of action that the defendant argues are merely conflict-preempted, the court must remand for want of subject matter jurisdiction." *Giles*, 173 F.3d at 337. On the other hand, "[w]hen a complaint raises both completely-preempted claims and arguably conflict-preempted claims, the court may exercise removal jurisdiction over the completely-preempted claims and supplemental jurisdiction (formerly known as 'pendent jurisdiction') over the remaining claims." *Id.* at 337–38 (citing *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 241 (5th Cir. 1990)).

UHC's position is that Benoit, in naming Bridgestone as a defendant, is seeking to recover benefits and enforce rights under the terms of an ERISA plan. As such, UHC argues that Benoit's state-law claims duplicate, supplement, or supplant the civil enforcement remedy found in ERISA § 502(a)(1)(B) and are therefore preempted. The court disagrees.

ERISA § 502(a)(1)(B) provides as follows:

> A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). In *Aetna Health v. Davila*, the Supreme Court explained that:

> [ERISA § 502(a)(1)(B)] is relatively straightforward. If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits. A participant or beneficiary can also bring suit generically to "enforce his rights" under the plan, or to clarify any of his rights to future benefits. . . .

-11-

> It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). . . . In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA § 502(a)(1)(B).

542 U.S. 200, 210 (2004) (citations omitted).

The court is not persuaded that the *Davila* standard is satisfied here. Benoit could not have brought his claims against Bridgestone under ERISA § 502(a)(1)(B), because Benoit is not claiming that he was wrongfully denied coverage that was due under the terms of the Bridgestone plan. Rather, in naming Bridgestone a defendant, Benoit is attempting to hold the sponsor of his plan liable for the improper billing practices of WCCH under Louisiana theories of solidary liability. The legal arguments in favor of solidary liability, *i.e.* breach of a *promesse de porte-fort* and detrimental reliance, are based on Louisiana law, rather than ERISA or an ERISA plan.

The Eastern District of Louisiana was faced with a similar case in *Anderson v. Ochsner Health System*, No. 11-2236, WL 2116173 (E.D. La. June 11, 2012). In that case, plaintiff Yana Anderson was treated at Ochsner's Baton Rouge facility following an automobile accident. *Id.* at *1. Anderson claimed that Ochsner was a contracted healthcare provider under her ERISA health insurance policy, which was administered by UHC. *Id.* After Ochsner allegedly sought the full amount of Anderson's charges directly from her, rather than submitting the claim to UHC, Anderson sued Ochsner in Louisiana state court for violations of the Balance-Billing Act. *Id.* Anderson also alleged that Ochsner's actions constituted a breach of the "hospital participation agreement" between UHC and Ochsner, which, Anderson claimed, obligated Ochsner to submit Anderson's bills to UHC

for processing before seeking payment directly from her. *Id.* Ochsner promptly removed Anderson's suit to federal court, arguing that Anderson's claims were completely preempted under ERISA § 502(a)(1)(B) because the court would be required to interpret her ERISA plan in order to determine whether the services Anderson received were "covered services." *Id.*

The *Anderson* court disagreed, and found that plaintiff's claims did not meet the *Davila* test. *Id.* at *3–*5. In so holding, the court relied on the thorough opinion in *Gulf Coast Plastic Surgery v. Standard Ins. Co.*, 562 F. Supp. 2d 760, 767 (E.D. La. 2008), for the proposition that in order for ERISA preemption only applies if the claim: (1) requires interpretation of an ERISA plan; and (2) implicates a relationship governed by ERISA. *Anderson*, 2012 WL 2116173 at *4. The court concluded that Anderson's claims against Ochsner did not require interpretation of an ERISA plan, because the claims did not involve a coverage determination or a wrongful denial of benefits; rather, Anderson's claims hinged on whether Ochsner complied with its obligations under its provider agreement with UHC. *Anderson* 2012 WL 2116173 at *3–*4. Additionally, the court ruled that Anderson's claims against Ochsner did not "implicate a relationship governed by ERISA" because Ochsner, a hospital, was not a "principal ERISA entity." *Id.* at *4. Consequently, *Davila* was not satisfied because "[a]s this dispute between Anderson and Ochsner is not a relationship governed by ERISA and this case does not involve a denial of benefits, Anderson could not sue Ochsner pursuant to ERISA § 502(a)." *Id.*

This court finds the reasoning of the *Anderson* case equally appropriate here. Although the instant case does name principal ERISA entities as defendants, the fact that plaintiffs are not seeking benefits makes their claims materially indistinguishable from the claim at issue in *Anderson*. Plaintiffs' claims will not require the court to interpret an ERISA plan to determine whether

plaintiffs were wrongfully denied coverage or whether the administration of a claim was improper. Plaintiffs' primary complaint involves WCCH's violations of the Balance-Billing Act. The secondary argument that the employer-sponsors and third-party administrators are solidarily liable for WCCH's actions does not convert this suit into an ERISA case. In seeking to impose solidary liability, plaintiffs are not relying on ERISA or the particular terms of an ERISA plan. Rather, plaintiffs are relying on independent state-law duties, *i.e.* breach of a *promesse de porte-fort* and detrimental reliance. Under the *Davila* standard, such arguments do not fall within the scope of ERISA § 502(a)(1)B).

Whether a plaintiff's claims are superseded under ERISA § 514(a) because such claims "relate to" an ERISA plan is an entirely different inquiry than whether the plaintiff is seeking civil enforcement under § 502(a)(1)(B). "When the doctrine of complete preemption does not apply, but the plaintiff's claim is still arguably preempted under § 514(a), the district court, being without removal jurisdiction, must remand to the state court where the preemption issue can be addressed and resolved." *Nixon v. Vaughn*, 904 F. Supp. 2d 553, 561 (W.D. La. 2013) (citing *Giles*, 172 F.3d at 337). Having found that complete preemption does not apply to plaintiffs' claims, the court must remand the matter to state court. Because the court finds that it does not have subject matter jurisdiction, the court pretermits discussion of plaintiffs' procedural objections.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' claims are not completely preempted under ERISA, and the matter must therefore be remanded. Accordingly:

**IT IS ORDERED** that plaintiffs' motion to remand, [Doc. # 34], be and is hereby **GRANTED**. This matter is hereby **REMANDED** to the 14th Judicial District Court, in and for the Parish of Calcasieu, Louisiana, for further proceedings;

**IT IS FURTHER ORDERED** that any and all other outstanding motions be and are hereby **DENIED AS MOOT**.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 9 day of July, 2015.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE